```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                    :
KENNETH CORTEZ MINOR                
                                    :
                                    
    v.                              :   Civil Action No. DKC 09-2967
                                        Criminal No. DKC 06-0028
                                    :
UNITED STATES OF AMERICA
                                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion filed by Petitioner Kenneth Cortez Minor to vacate, set aside, or correct his sentence. (ECF No. 342). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be denied.

**I.   Background**

By an indictment filed January 23, 2006, Petitioner was charged with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine. He subsequently entered into a plea agreement with the government. Attached to the written agreement was a stipulation of facts, which described, *inter alia*, the circumstances of Petitioner's arrest:

> On February 2, 2006, law enforcement officers entered Kenneth Minor's residence at 1620 Hamlin St., N.E., Washington, D.C., to execute a search warrant. As members of the Metropolitan Police Department ascended the stairs and approached Minor's bedroom,

> Kenneth Minor fired two shots from a Highpoint Luger 9mm handgun toward the closed door of his bedroom. One round lodged in the door frame and the other round penetrated the door and lodged in the stairway wall. Officers did not return fire, and Minor barricaded himself inside the bedroom for approximately 1 ½ hours before surrendering.

(ECF No. 199, Ex. A, at 1). Petitioner signed the statement of facts, acknowledging that he had "carefully reviewed" it with his attorney and that it was "true and correct." (*Id*. at 2). The parties further stipulated to a base offense level of 30, which, they proposed, would be increased two levels for possession of a dangerous weapon, and six levels, pursuant to U.S.S.G. § 3A1.2(c)(1), "because, during the course of the offense, [Petitioner] knowingly assaulted law enforcement officers in a manner creating a substantial risk of serious bodily injury." (ECF No. 199, at 4).[1] By separately signing the plea agreement, Petitioner acknowledged that he had "carefully reviewed every part of it with [his] attorney"; that he understood and "[did] not wish to change any part" of the "Factual and Advisory Guidelines Stipulation"; and that he was "completely satisfied" with his counsel's representation. (*Id*. at 8).

---

[1] The government stipulated that it would not oppose a two-level reduction based on acceptance of responsibility and that, if the offense level were 16 or higher, it would move for a further decrease of one level.

At the Rule 11 hearing, Petitioner was placed under oath and acknowledged his understanding of the charge against him and the litany of rights he was required to waive by pleading guilty. He confirmed his awareness that the court was not bound by the terms of the parties' agreement, and that, if his plea were to be accepted, he "[would] not be allowed to withdraw [it] no matter what decisions [were made] at the time of sentencing." (ECF No. 270, at 10). The court reviewed the content of the written plea, in detail, emphasizing that it was "very important that [he] understand all of its terms." (*Id*.). After the prosecutor read the statement of facts into the record, Petitioner confirmed that it was accurate and agreed that he was guilty as charged. (*Id*. at 14-15). The court explained the parties' stipulations regarding the advisory guideline factors, and Petitioner indicated that he understood. (*Id*. at 16-19). After further affirming that, aside from the written plea agreement, no other promises or inducements had been made, Petitioner stated that he had met with his attorney on two occasions to discuss the plea, that counsel had answered all of his questions, and that he was satisfied with his representation. Based on these sworn statements, the court accepted Petitioner's guilty plea, finding that it was entered into knowingly, voluntarily, and intelligently, and that there was an adequate factual basis.

At the sentencing hearing on December 3, 2007, the court adopted the parties' recommendation of an adjusted offense level of 35 and determined Petitioner was in criminal history category I, resulting in a guideline range of between 168 and 210 months. (ECF No. 271, at 5). In arguing for the maximum term under the guidelines, the government expanded upon the facts set forth in the statement of facts related to Petitioner's arrest:

> [W]hen law enforcement officers went to his residence to execute a search warrant, they knocked very loudly on that door. They entered the door. They had announced their presence loudly, and Mr. Minor chose to shoot at them through his bedroom door. . . . Mr. Minor then, probably in a moment of panic, decided to call 911 and report that someone had broken into his house. Clearly the officers had knocked and announced loudly. The 911 [operator] said, sir, they're law enforcement officers. They're there executing a search warrant. Stop. He barricades himself in his house, despite that information, for over an hour and a half, creating even more danger to the officers who were on the scene.

(*Id*. at 8). The prosecutor asserted that "the barricade situation" was "not fully accounted for with just the six-level increase" and that a sentence at the high end of the range was, therefore, warranted. (*Id*. at 8-9).

In opposing the government's argument, defense counsel cited testimony by Petitioner's wife at a pre-trial detention hearing that the arrest "was a very chaotic event and that she had no recollection of the police clearly identifying themselves

4

until afterward[;] . . . in fact, the police officers, with respect to their interaction with Ms. Minor, actually identified themselves at the point of a gun." (*Id.*).[2] Defense counsel maintained that the guideline range agreed to by the parties had accounted for Petitioner's conduct at the time of arrest and that "the Government should be restrained by their own agreement[.]" (*Id.* at 10).

Thereafter, as the court explained the rationale for the sentence it would impose, Petitioner interrupted:

> On the incident that keeps stating that I knew it was a police officer, in that case I dialed 911 twice. I stated – I stayed on the phone with them approximately – feels like it was about – about 10, 15 minutes apiece. I stated over and over again where are you located? Officer, where are you located? They kept stating that we're on our way. We're on our way. I said I think my family is in danger. Some intruders [are] inside the house. Stay on the phone with us. Stay on the phone with us. The phone hangs up.
>
> I dialed 911 again. Get another dispatcher. He said the same thing. The police is on their way. We got the other call. The police is on their way. Just stay on the phone with us.
>
> I'm busy trying to figure out, well, who is this inside the house if they keep saying the police is on their way[?]

---

[2] Counsel later acknowledged that he was under the mistaken impression that this hearing had been before the district judge when, in fact, it was before a magistrate judge.

5

(*Id*. at 18-19). The court responded that, despite what may have occurred at a prior hearing,

> [t]he plea here agrees that he shot through the door while the officers were going upstairs. . . . [There were] other people on the other side getting shot at even if you didn't know for sure [that they] were police officers. But what the guideline says is that you have reason to know that they are police officers. And here, both because of the knock and announce, as well as the 911 call, . . . you were told, and maybe you were too caught up in it to hear what was available, but you did acknowledge responsibility for that conduct in that fashion as part of the plea, and we're not going behind that at this point.

(*Id*. at 20-21). After addressing additional factors, the court sentenced Petitioner to a term of imprisonment of 168 months – *i.e.*, at the bottom of the advisory guideline range – to be followed by a four-year term of supervised release.

Although Petitioner waived his right to appeal as part of the plea agreement, he nevertheless filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit. By a *per curiam* opinion issued July 15, 2009, the Fourth Circuit dismissed the appeal in part and affirmed Petitioner's conviction. *See United States v. Minor*, 328 Fed.Appx. 852 (4th Cir. 2009).

On November 9, 2009, Petitioner, proceeding *pro se*, filed the pending motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 342). The government

6

was directed to respond, and did so on February 28, 2011. (ECF No. 389).[3]

## II. Standard of Review

To be eligible for relief under 28 U.S.C. § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). A *pro se* movant, such as Petitioner, is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). But if the § 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b).

## III. Analysis

According to Petitioner, on the date of his arrest, police officers executing the search warrant entered his home, without

---

[3] When the response was not received by the scheduled date, Petitioner moved for an order directing the government to show cause why it should not be held in contempt. (ECF No. 359). The government later explained that the delay in filing was due largely to the fact that the case was reassigned following the transfer of the trial prosecutor. (ECF No. 387). The court accepts this explanation, further finding that no prejudice inured to Petitioner. Accordingly, this motion will be denied.

first knocking and announcing their presence, and proceeded up the stairs to his bedroom. Purportedly unaware that they were police officers, Petitioner "fired two shots at the bedroom door[,] . . . barricaded himself in the bedroom[,] and began dialing '911' to [report] that some intruders had broken into his home." (ECF No. 342-1, at 2). He asserts that he was told by the 911 operator that "officers [were] on their way" and that he remained inside the barricade for approximately ninety minutes "awaiting the[ir] arrival[.]" (*Id.*). "Once the hour and a half had elapsed," Petitioner alleges, "the law enforcement officials [] decided that they were going to announce themselves as officers," at which point he "unbarricaded [sic] himself from behind the bedroom door" and was placed under arrest. (*Id.*).

His § 2255 motion attacks the application of the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) on two levels.[4]  First,

---

[4] As the Fourth Circuit explained in *United States v. Frasier*, 483 Fed.Appx. 791, 793 (4th Cir. 2012):

> Pursuant to USSG § 3A1.2(c)(1), a defendant qualifies for a six-level enhancement if, knowing or having reasonable cause to believe that a person is a law enforcement officer, he assaults the officer in a manner creating a substantial risk of serious bodily injury during the course of an offense or during immediate flight from the offense. USSG § 3A1.2(c)(1). Under the Guidelines, such conduct is tantamount to aggravated assault, USSG § 3A1.2 cmt. n.

8

he contends that his trial counsel rendered ineffective assistance insofar as he (1) failed to inform him that "[he] was going to be enhanced for firing a firearm at officers who [he] thought were intruders" (ECF No. 342, at 8), and (2) "failed to investigate the evidence and present a justification defense" (ECF No. 342-1, at 6-7) – *i.e.*, presumably, that Petitioner justifiably shot at the individuals through the door, not knowing that they were police officers. Petitioner further contends that the court erred by imposing the enhancement because there was an inadequate factual basis for doing so.

### A. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate actual prejudice, Petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the

---

        4(A), which is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." USSG § 2A2.2 cmt. n. 1.

proceeding would have been different." *Id*. at 694.  In the context of a § 2255 motion challenging a conviction following a guilty plea, the petitioner generally establishes prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord United States v. Mooney*, 497 F.3d 397, 401 (4th Cir. 2007).

In applying *Strickland*, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance.  *Id*. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).  Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact."  *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted from some performance deficiency. *See Strickland*, 466 U.S. at 697.

A petitioner who pleads guilty has an especially high burden in establishing an ineffective assistance claim. As the Supreme Court recently explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that

10

must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, --- U.S. ----, 131 S.Ct. 733, 745-46 (2011). Thus, a petitioner alleging ineffective assistance in the context of a guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id*. at 746.

That burden has not been met here. In his written plea agreement, Petitioner stipulated to the application of the six-level enhancement, specifically acknowledging that he had carefully reviewed the document with his counsel and that he "[did] not wish to change any part" of the "Factual and Advisory Guidelines Stipulation." (ECF No. 199, at 8). During his plea colloquy, he confirmed, under oath, his understanding that the enhancement would apply; that he would not be allowed to withdraw his plea after it was accepted because he later disagreed with some aspect of his sentence; and that he was satisfied with his trial counsel's representation in connection with the plea. Despite his sworn testimony to the contrary, Petitioner now asserts that, shortly after the pre-sentence interview, his counsel "assured" him that his sentence would be a term of imprisonment of "78 months, or . . . somewhere in the 10-year range," and that, had he known he was going to receive the six-level enhancement, he "would not have accepted the plea offer." (ECF No. 342, at 8).

Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005); *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("when a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process"); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy"). Petitioner has not presented any extraordinary circumstances warranting relief. He does not appear to allege that his counsel induced his guilty plea by promising a reduced sentence, but even if he did, he could not show prejudice resulting from any deficiency because the transcript of the Rule 11 hearing reflects that he was sufficiently apprised of all facts necessary to make an informed decision with respect to his plea. *See* Fed.R.Crim.P. 11(b); *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1988) ("any misinformation [the petitioner] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [the petitioner] was not prejudiced"); *see*

12

*also Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984) ("An attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea"). Accordingly, Petitioner's first ineffective assistance claim cannot prevail.

His second claim fares no better. It is not entirely clear what Petitioner means when he faults his counsel for failing to raise or investigate a "justification" defense, but his argument appears to be that his attorney should have challenged that Petitioner did not have reasonable cause to believe that he was assaulting police officers, rather than unlawful intruders, when he fired a weapon through his bedroom door; thus, the enhancement under U.S.S.G. § 3A1.2(c)(1) could not apply. This argument, of course, overlooks the fact that Petitioner stipulated to the application of the six-level enhancement. Having specifically agreed that the enhancement would apply, counsel's performance could not have been deficient because he failed to argue that it should not. To be certain, the sentencing transcript reflects that both Petitioner and his counsel were aware of this issue, as they both alluded to the fact that Petitioner may not have known there were police officers in his home at the time of the assault. Counsel for both parties argued that these facts had bearing on whether the sentence should be at the top or bottom of the guideline range.

There was never any dispute, however, that the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) would apply. To the extent that the justification defense cited by Petitioner relates to a trial right, he specifically waived his right to raise it by pleading guilty. (*See* ECF No. 270, at 9). It bears mention, moreover, that a true justification defense would only have been available in relation to an assault charge brought by a superseding indictment, rather than the drug offense for which Petitioner stands convicted. Due to his counsel's work in negotiating a plea to the drug offense, Petitioner managed to avoid further prosecution.

In support of his argument, Petitioner cites *United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007), in which the Fourth Circuit found that a § 2255 petitioner was entitled to relief on an ineffective assistance claim where his lawyer advised him that a justification defense was unavailable, thereby effectively inducing his guilty plea. That case is factually inapposite. The issue here concerns the application of a guideline enhancement, not a defense to the underlying charge. Moreover, the instant record amply reflects that Petitioner agreed to the application of the enhancement at issue, and there is no indication that his counsel misunderstood the guideline language. Thus, there is no showing of attorney error. Petitioner's after-the-fact contention that he did not know the

14

enhancement would be applied simply cannot be countenanced, particularly where he never moved to withdraw the plea prior to, or even at, the sentencing hearing, by which time it was abundantly clear that the guideline would include the six-level enhancement. Accordingly, his second ineffective assistance claim must fail.

Finally, Petitioner alleges that the court erred in applying the enhancement. This claim, however, is not cognizable in the context of a § 2255 motion because an alleged miscalculation of the guidelines does not give rise to a constitutional issue. *See United States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999).

**IV. Conclusion**

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted).

Upon its review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it declines to issue a certificate of appealability.

A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge